```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF MISSISSIPPI
                    EASTERN DIVISION

ELONZO HARRY AND
MARILYN HARRY                                         PLAINTIFFS

v.                                   CIVIL ACTION NO. 4:04CV207LN

SARAH P. SPRINGER; JUSTIN M. COBB;
LEONARD B. COBB; LAUDERDALE COUNTY,
MISSISSIPPI; BILLY SOLLIE, INDIVIDUALLY AND
AS SHERIFF OF LAUDERDALE COUNTY, MISSISSIPPI          DEFENDANTS
```

### MEMORANDUM OPINION AND ORDER

This cause is before the court on motion of defendants Sheriff Billy Sollie and Lauderdale County, Mississippi for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiffs Elonzo Harry and Marilyn Harry have responded in opposition. The court, having considered the memoranda and submissions of the parties, concludes that defendants' motion should be granted.

The facts which gave rise to this action were laid out in detail by this court in its March 24, 2005 opinion and order, which dismissed plaintiffs' claims against defendants Judge Sarah Springer, Justin Cobb and Leonard Cobb. In summary, in 2002, Mattie Bell Harry, Elonzo Harry's ex-wife, filed a motion in the Lauderdale County Chancery Court seeking to enforce Mr. Harry's child support obligations. Judge Sarah Springer found Mr. Harry in civil contempt for failing to pay child support and ordered that he be detained in the Lauderdale County Detention Facility. Approximately six months later, Mr. Harry was released on bond.

During his incarceration, Mr. Harry filed a motion to set aside judgment, arguing that the Lauderdale County Chancery Court did not have jurisdiction to enforce the child support obligations stemming from the Harrys' 1993 judgment of divorce entered in the Chancery Court of Lamar County, Mississippi. Judge Springer ruled against Mr. Harry, following which he appealed, and on October 14, 2003, the Mississippi Court of Appeals reversed, finding that the Lamar County Chancery Court had exclusive and continuing jurisdiction over matters pertaining to the Harrys' judgment of divorce. One year later, Mr. Harry filed the instant action asserting various claims against Judge Springer, attorneys Leonard and Justin Cobb, who had represented Mattie Bell Harry in the matter, Lauderdale County, and Sheriff Billy Sollie, who is charged with the operation of the Lauderdale County Detention Facility where Mr. Harry was detained. Following the court's March 2005 opinion, the only remaining claims are those against Sheriff Sollie, in his individual and official capacities,[1] and Lauderdale County.

Now, Sheriff Sollie and Lauderdale County have moved for summary judgment as to all of plaintiffs' claims against them, to include claims asserted pursuant to 42 U.S.C. §§ 1983, 1985(2),

---

[1] By naming Sheriff Sollie in his official capacity, plaintiffs have essentially instituted suit against the Sheriff's Department and seek to hold the municipality liable for their alleged injuries. See Kentucky v. Graham, 473 U.S. 159, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985).

2

1986 and 1988, plaintiffs' "Mississippi State Tort Claims,"[2] plaintiffs' claim for abuse of process, and Marilyn Harry's claim for loss of consortium, all of which are based on allegations that Mr. Harry was wrongfully imprisoned in the Lauderdale County Detention Facility and that he did not receive adequate medical care during his incarceration.[3]

In their motion for summary judgment, defendants first submit that in light of the court's conclusion that plaintiffs' claims against Judge Springer should be dismissed based on absolute judicial immunity, it follows that plaintiffs' claims against these defendants for wrongful imprisonment, arising out of the execution of Judge Springer's order, are similarly barred by the doctrine of absolute immunity.  See Mays v. Sudderth, 97 F. 3d 107 (5th Cir. 1996)(concluding that "a government official's strict compliance with a facially valid judicial order issued by a court acting within its jurisdiction clothes the official with the absolute judicial immunity enjoyed by the judge issuing the order.").  In response, plaintiffs argue that Sheriff Sollie had a

---

[2] This section of the complaint recites that Mr. Harry "was jailed without authority, subject matter jurisdiction or due process of law" and that "this confinement was unlawful, unconstitutional, unjustified and unwarranted."  Plaintiffs further allege that "[a]s a direct and proximate result of the actions and inactions of the defendants," they have suffered pain and suffering, mental distress, humiliation, loss of liberty, denial of effective medical treatment and loss of money and the ability to earn a living during Mr. Harry's incarceration.

[3] In their complaint, plaintiffs contend that Lauderdale County is liable for Sollie's actions under a theory of respondeat superior.

3

duty to investigate the authority upon which he held Mr. Harry and determine if his continued incarceration was lawful, citing Whirl v. Kern, 407 F. 2d 781 (5th Cir. 1968), and Brown v. Byer, 870 F. 2d 975 (5th Cir. 1989).  Defendants submit that both Whirl and Brown are distinguishable from the instant case, and the court agrees.  In Whirl, Sheriff Kern failed to release Whirl, a pre-trial detainee, for nine months after the district attorney sought and obtained a dismissal of the charges against him based on insufficient evidence.  407 F. 2d at 785.  The liability of Sheriff Kern was based on his failure to discover the dismissal of all charges against Whirl.  In its opinion, the Fifth Circuit distinguished Whirl from cases involving judicial immunity, stating,

> Judicial immunity is likewise not a point of contention on this appeal.  It is undisputed that Sheriff Kern did not act pursuant to any court order or certificate of commitment in restraining Whirl beyond the date when charges were dismissed.  Cases which provide immunity to prison officials acting under court orders valid on their face are therefore inapplicable.

Id. at 786.  In Brown, the Fifth Circuit affirmed a judgment against a deputy constable who had altered a warrant issued for the arrest of an individual in order to ensure that the warrant matched the plaintiff's personal information.  870 F. 2d at 976. In Mays, the Fifth Circuit specifically distinguished Brown from cases involving absolute immunity.

> Mays' reliance on . . . Brown v. Byer, 870 F.2d 975 (5th Cir. 1989) . . . is misplaced. . . .  In Brown, this court affirmed a judgment against a deputy constable who had altered a warrant issued for the arrest of an individual sharing the plaintiff's name, 870 F.2d at

4

> 976-77, and the court questioned whether a warrant thus altered could be considered "facially valid." Id. at 979.

Mays, 97 F.3d at 114.

As this court has previously held that Judge Springer is entitled to absolute judicial immunity for her actions in issuing the warrant for Mr. Harry's arrest, it follows that Sheriff Sollie and Lauderdale County are similarly entitled to absolute immunity for executing that facially valid warrant.  Accordingly, the court concludes that plaintiffs' wrongful imprisonment claim should be dismissed.

Defendants also argue that plaintiffs' claim that Mr. Harry did not receive adequate medical care during his incarceration is not supported by the evidence.  In their complaint, plaintiffs allege that Mr. Harry suffered from a bleeding ulcer, that he had been prescribed Prilosec to treat this condition, and that the Sheriff's Office refused his repeated requests for Prilosec.  To succeed on a claim relating to the denial of adequate medical care while incarcerated, a plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs and thereby caused the "unnecessary or wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 104-05, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976).  This requires evidence that the defendant was subjectively aware of a substantial risk of serious harm and failed to take reasonable measures to abate that risk.  Hare v. City of Corinth, 74 F.3d 633, 649 (5th Cir. 1996).  In Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir.

5

2001), the Fifth Circuit explained the "deliberate indifference" standard as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Furthermore, the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference.

Here, it is undisputed that Sheriff Sollie was not directly involved in Mr. Harry's medical care, and therefore, he cannot be held individually liable with respect to this claim. See Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983)("Personal involvement is an essential element of a civil rights cause of action."); Allen v. Gusman, 2006 WL 286007, *3(E.D. La. Feb. 2,2006).

Moreover, as to the claim against Sheriff Sollie in his official capacity, and hence against the County, defendants contend that plaintiffs cannot establish a prima facie case of municipal liability under § 1983, in that there is no evidence of a municipal policy or custom, as is required to support a finding of municipal liability.

> A municipality is liable under § 1983 only if three requirements are met. First, the municipality must have "an official policy, practice, or custom" which could subject it to § 1983 liability. Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690-94, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Second, the official policy must be linked to the constitutional violation. Id. Finally, the official policy must reflect the municipality's deliberate indifference to that injury. . . . An "official

6

policy" for § 1983 purposes may be either a written policy or "a persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." <u>Webster v. City of Houston</u>, 735 F.2d 838, 841 (5th Cir. 1984).

<u>Lawson v. Dallas County</u>, 286 F.3d 257, 263 (5th Cir. 2002). In response to defendants' motion, plaintiffs have not presented any evidence of a policy or custom.

In any event, the proof does not support a finding that there was, in fact, deliberate indifference to Mr. Harry's medical needs. In this regard, in support of their motion, defendants have presented the affidavits of Dale Higginbotham, a family nurse practitioner who was employed as the detention facility's medical clinic director during Mr. Harry's incarceration, and Ronald Bullock, a registered nurse who worked at the medical clinic during the relevant time period. In their respective affidavits, Higginbotham and Bullock have set forth a detailed summary of their interactions with Mr. Harry, his medical history, his complaints and his treatment. In summary, the evidence shows that shortly after his arrival in May 2002, Mr. Harry was interviewed by Bullock regarding his medical status. Mr. Harry confirmed that he had a history of stomach ulcers, that he had been taking Prilosec, and that he did not bring any Prilosec with him. In response, Bullock sought Mr. Harry's permission to obtain a copy of his prior medical records or to contact his physician or pharmacy to confirm his alleged medical condition and the need for prescription medication. Mr. Harry refused. As a result, Bullock

7

provided Mr. Harry with a bottle of Maalox, an antacid, with instructions to take the Maalox before meals and at bedtime and to follow up with the clinic if his symptoms worsened.

In June 2002, Mr. Harry complained of an upset stomach and ulcer pain and was seen by Higginbotham. She examined Mr. Harry, concluded that he was not experiencing bleeding associated with a stomach ulcer, and prescribed Pepcid AC and Maalox for treatment of the upset stomach. Approximately two weeks later, Mr. Harry informed Higginbotham that the Pepcid AC was working well for his ulcers. In August 2002, Mr. Harry again complained of ulcer pain, and Higginbotham increased his dosage of Pepcid AC. Mr. Harry did not make any further complaints regarding stomach or ulcer pain.

Defendants submit that the evidence clearly shows that Mr. Harry received constitutionally adequate medical care. In their response, plaintiffs do not contend otherwise. In sum, the court is of the opinion that summary judgment is in order as to plaintiffs' inadequate medical care claim.

Defendants also argue that plaintiffs' claims asserted pursuant to 42 U.S.C. § 1985(2), prohibiting a civil conspiracy to bring about an obstruction of justice or intimidation of a party, witness or juror, § 1986, providing a claim for neglect or refusal of persons to prevent a violation of § 1985, and § 1988, providing for an award of attorney's fees to a prevailing party, must also fail. In <u>Bradt v. Smith</u>, 634 F.2d 796,(5th Cir. 1981), the Fifth Circuit explained the requirements to proceed under § 1985(2).

> Because the first four clauses of § 1985(2) refer to conspiracies that are designed to obstruct the course of justice "in any court of the United States," plaintiffs seeking to recover under those clauses must show a nexus between the alleged conspiracy and a proceeding in federal court.  Because the last two clauses of § 1985(2) refer to conspiracies designed to deny or interfere with equal protection rights, plaintiffs seeking to recover under those clauses must show a racial or otherwise class-based discriminatory animus.

Id. at 801 (citations omitted).  As pointed out by defendants, plaintiffs have not set forth any allegation of a conspiracy with a racially discriminatory animus, and plaintiffs do not contend otherwise in their response.  As such, it is evident that plaintiffs' § 1985 claims should be dismissed.  See U.S. ex rel. Simmons v. Zibilich, 542 F.2d 259, 262 (5th Cir. 1976).  Moreover, because plaintiffs' § 1986 and § 1988 claims are linked to the existence of a § 1985 claim (or a § 1983 claim), these claims will also be dismissed.  See 42 U.S.C. §§ 1986 and 1988; Vanderwall v. Peck, 2004 WL 944518, *5 (E.D. La. 2004).

As for plaintiffs' state law tort claims, defendants argue that because plaintiffs' claims relate to Mr. Harry's imprisonment and the treatment he received during his incarceration at the Lauderdale County Detention Facility, both the County and Sheriff Sollie are entitled to sovereign immunity pursuant to Mississippi Code Annotated § 11-46-9(1)(m).  That section provides, in part, that

> [a] governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim. . . of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution . . . .

9

Defendants further assert that to the extent that § 11-46-9(1)(m) may not reach Mr. Harry's arrest and initial confinement, § 11-46-9(1)(c) would bar such claims since there is no proof that Sheriff Sollie acted in "reckless disregard" for the safety and well-being of Mr. Harry. Mississippi Code § 11-46-9(1)(c) provides, in part, that

> [a] governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim: . . . [a]rising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.

In their response, plaintiffs do not address their state law tort claims. Accordingly, the court concludes that plaintiffs' state law tort claims are barred by the Mississippi Tort Claims Act.

In count six of their complaint, plaintiffs assert that defendants actions constituted abuse of process. In order to establish an abuse of process claim, plaintiffs must show "(1) that the party made an illegal use of the legal process; (2) the party had an ulterior motive for bringing the charge; and (3) damages result from the perverted use of the legal process." Croft v. Grand Casino Tunica, Inc., 2005 WL 43770, *7 (Miss. Ct. App. 2005)(citing McLain v. West Side Bone and Joint Center, 656 So. 2d 119, 123 (Miss. 1995)); see also Allred v. Moore & Peterson, 117 F.3d 278, 284 (5th Cir. 1997). Defendants submit that plaintiffs' abuse of process claim should be dismissed because it is predicated on their allegation that Justin and

10

Leonard Cobb brought repeated legal filings in a court that lacked subject matter jurisdiction, a claim which was dismissed by the court in its earlier opinion.[4]  There is no allegation that Sheriff Sollie made any filings in any court, or that he did anything other than enforce the order entered by Judge Springer.  Accordingly, plaintiffs' claim against these defendants for abuse of process is dismissed.

Finally, defendants argue that plaintiff Marilyn Harry's claim for loss of consortium must fail, because that claim is derivative of Elonzo's claims.  Because the court has concluded that all claims asserted by Elonzo Harry against defendants should be dismissed, it follows that Mr. Harry's loss of consortium claims must also be dismissed.

Based on the foregoing, defendants' motion for summary judgment is granted.

Plaintiffs' motion for an interlocutory appeal is denied.

A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

SO ORDERED this 29th day of March, 2006.

                                         /s/ Tom S. Lee
                                         UNITED STATES DISTRICT JUDGE

---

[4] The court found that there was no allegation that the Cobbs had an ulterior, improper or malicious motive and that the mere filing of a motion in chancery court, even if that court is later found to be without jurisdiction to consider the motion, does not constitute abuse of process.